**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

SCOTT PHILLIP LEWIS,

                                    Plaintiff,

          v.

FRANKLIN COUNTY, NY, et al.,                              No. 8:23-CV-01647
                                                          (DNH/CFH)

                                    Defendants.

_____

**APPEARANCES:**

Scott Phillip Lewis
1936 Saranac Avenue
#3, PMB 411
Lake Placid, New York 12946
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

#### I. In Forma Pauperis

     Plaintiff pro se Scott Lewis ("plaintiff")[1] purported to commence this action on

December 28, 2023, by filing a complaint.  See Dkt. No. 1 ("Compl.").  In lieu of paying

_____

[1] The undersigned notes that plaintiff has filed numerous other actions that are presently pending in this District, as well as others.  See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Walsh, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024); Lewis v. Essex Cnty., 8:24-CV-00100 (MAD/CFH) (N.D.N.Y. filed Jan. 19, 2024); Lewis v. Despos, LLC, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Redline Hockey, LLC, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Citizens United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 22 (dismissing complaint with leave to amend); Lewis v.

this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP").  See Dkt. No. 3.  The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2]

## II. Initial Review

### A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such

---

Adirondack Med. Ctr., 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Onondaga Cnty., 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 11 (Report-Recommendation recommending dismissal pending review); Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023); Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 142 (Report-Recommendation recommending granting summary judgment in favor of the defendants pending review).
[2] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

> submissions must be read to raise the strongest arguments
> that they suggest.  At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims
> that are not consistent with the pro se litigant's allegations,
> or arguments that the submissions themselves do not
> suggest, that we should not excuse frivolous or vexatious
> filings by pro se litigants, and that pro se status does not
> exempt a party from compliance with relevant rules of
> procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).  Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]."  Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d

Cir. 1994)).[3]  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction . . .  and (3) a demand for the relief sought . . . ."  FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  FED. R. CIV. P. 8(d).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis

---

[3] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### B. Plaintiff's Complaint

Plaintiff provides a detailed summary of his physical and mental health history, alleging that his "relationship with chronic pain beg[an] in 2012."[4]  Compl. at 4, ¶23.[5]  In 2012, "[p]laintiff had [his] left wrist severely broken, requiring [surgery]," and "[a]fter surgery, [p]laintiff was prescribed Oxycontin[.]"  Id.  "By 2013, [p]laintiff had noticed changes in life's work and normal activities because of the constant chronic pain in the left wrist." Id. at 5, ¶25.  "By May 2014, [p]laintiff made the choice to remain abstinent from alcoholic beverages as the chronic pain mixed with alcohol had become an unpleasant experience with irritable behavior becoming more frequent." Id.  "Shortly after making this choice, [p]laintiff . . . moved from Syracuse, New York[,]" to Austin, Texas, to start a new job.  Id.

"In November 2015, [p]laintiff was involved in a hit and run accident . . . in Austin, Texas[,] leaving [p]laintiff with a concussion and traumatic brain injury (TBI)." Compl. at 5, ¶26.  "The police who were involved never followed up with [p]laintiff,

---

[4] Plaintiff includes this nearly identical recitation in at least two of his other cases.  See Lewis v. Citizens United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 7, 2024); see also Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023).
[5] Citations are to the pagination generated by CM/ECF, located in the header of each page.

seemingly attempting to cover up what happened." Id. "After the 2015 hit and run incident, [p]laintiff experienced a progressive increase in attention-deficit/hyperactivity disorder ('ADHD') symptoms associated with the post-traumatic stress disorder ('PTSD') from the accident and lack of police professionalism, follow up and transparency." Id. at 5, ¶27. "After the progression of symptoms of PTSD and ADHD from the 2015 hit and run accident, [p]laintiff had developed an alcohol abuse disorder[.]" Id. at 5-6, ¶28.

"[O]n or around July 2018 . . . [p]laintiff experienced an . . . increase in ADHD and PTSD symptoms and separately, and increase in alcohol abuse[.]" Compl. at 6, ¶29. Plaintiff subsequently entered "a rehabilitation facility in Battle Creek, Michigan[,]" but he "made the decision to leave after approximately twelve (12) days" because "this was not a good fit" and "they were . . . a cult[.]" Id. at 6, ¶30. "This experience affected [p]laintiff's overall well-being." Id.

"On January 25, 2019, [p]laintiff was arrested for driving while intoxicated in Williamson County, T[exas]." Compl. at 2, ¶7. "Selective, manipulated and edited portions of the arrest were broadcast to over a million viewers on a television show advertising the edited arrests they were broadcasting as 'unfiltered and unfettered,' when in fact, it was not." Id. "This show was called 'LivePD,' a hit television show that used law enforcement as entertainment[.]" Id. at 2, ¶8. "Plaintiff suffered an anxiety attack when learning upon the non-consensual broadcast of the arrest and had his left shoulder broken by Williamson County Jail Staff as a result of the panic attack." Id. at 2, ¶9. "Plaintiff was then strapped to an immobilized chair for hours, having his blood drawn while strapped to a chair with a broken shoulder for suffering an anxiety attack." Id.

"On or around early March 2022, [p]laintiff traveled to Austin, T[exas] for a pre-trial conference concerning the 'LivePD' arrest."  Compl. at 3, ¶10.  "After attending the pre-trial matters in Williamson County, Texas, [p]laintiff flew to New York City and spent time at his brother's . . . apartment before traveling back to Lake Placid, N[ew York] via personal automobile."[6]  Id. at 3, ¶11.  "On or around March 17, 2022, the same day leaving New York City, [p]laintiff made the choice to buy cannabis legally from Akwesasne, New York before returning to his apartment in Lake Placid[.]"  Id. at 3, ¶12. "After leaving Akwesasne, [p]laintiff was stopped by New York State Trooper, Charles Bishop ('Officer Bishop')."  Id. at 3, ¶13.  "The traffic stop occurred after Officer Bishop stated that he saw [p]laintiff on camera going to a 'high drug trafficking' area and proceeded to search [p]laintiff's vehicle."  Id.  "Plaintiff gave Officer Bishop permission to look in his vehicle," but "did not give Officer Bishop explicit permission to open the trunk of the vehicle."  Id. at 8, ¶40; 12, ¶72.  "Upon opening the trunk of the vehicle, [p]laintiff had two suitcases packed in the back of the trunk since [p]laintiff was traveling back from Austin, Texas."  Id. at 8, ¶41.  "At this point, Officer Bishop asked if he could search the luggage[.]"  Id. at 8, ¶42.  Plaintiff did not want to "create[ ] the perception that [he] was hiding something[,]" so he "allowed Officer Bishop to search his luggage after the trunk was illegally opened."  Id. at 8, ¶¶43-44.  "Officer Bishop found luggage full of clothes, personal items for travel, a Google Chromebook laptop, a Microsoft Surface tablet, multiple books and multiple notebooks."  Id. at 8, ¶44.

---

[6] "The criminal charges associated with [p]laintiff's driving while intoxicated arrest were dismissed for insufficient evidence on or around April 25, 2022."  Compl. at 6, ¶32.  Plaintiff initiated a civil lawsuit against Williamson County in the United States District Court for the Western District of Texas.  See id.; see also Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021).

"Upon information and belief, the cameras used to initiate [p]laintiff's traffic stop and referenced by New York State Trooper Charles Bishop were located within the Village of Malone which is within the Town of Malone within Franklin County, New York." Compl. at 3, ¶15.  "Plaintiff had sent an email to the Franklin County District Attorney requesting the supporting deposition from Officer Bishop traffic stop."  Id. at 3, ¶16. "Plaintiff had mailed in the request within 30 days of the traffic stop yet never received a copy of the supporting deposition, still to this day."  Id.

"Originally, [p]laintiff was set to appear before Town Justice Robert G. Main, Jr. on March 29, 2022."  Compl. at 3-4, ¶17.  "After adjournments from the court, [p]laintiff appeared before new Town Justice June A. Fisher."  Id. at 4, ¶18.  "The charges were dismissed as Officer Bishop did not appear and agreed to drop charges."  Id.

"On or around September 26, 2022, [p]laintiff went to the Town offices of Malone and was told a final disposition had not yet been entered but [p]laintiff would be contacted once it was."  Compl. at 4, ¶19.  "Plaintiff was never contacted once it was, inflaming emotional distress in [p]laintiff."  Id. at 13, ¶79.  "On or around December 7, 2022, [p]laintiff received documentation that the charges were sealed despite [p]laintiff not being notified."  Id. at 4, ¶20.  The court records were sealed "improperly" and "without the consent of [p]laintiff."  Id. at 9, ¶49.  "On or around December 19, 2022, [p]laintiff received an email from Justice June A. Fisher stating that 'the sealing is done in the normal course of business.'"  Id. at 4, ¶21.  "Plaintiff perceives the actions taken to be a cover-up of constitutional rights and federal law violations inflaming emotional distress within [p]laintiff."  Id. at 4, ¶22.  "Upon information and belief, the unlawful sealing of records has not been corrected."  Id. at 17, ¶111.

## C. Analysis

Liberally construing plaintiff's complaint, he brings claims under 42 U.S.C. § 1983; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; and § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, against (1) Town Justice June A. Fisher; (2) the Franklin County District Attorney; (3) Officer Charles Bishop; (4) Franklin County; (5) the Town of Malone; and (6) the Village of Malone.[7]  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

### 1. Judicial Immunity

Plaintiff claims that Justice Fisher violated his rights under § 1983, the ADA, and the RA.  See generally Compl.  The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. AMEND. XI.  Thus, "'[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh

---

[7] Although plaintiff makes references to "Essex County, NY" and "the Village of Lake Placid, Inc." as defendants throughout his complaint, this appears to be a typo as plaintiff has another case on a separate matter pending against Essex County and the Village of Lake Placid.  Compl. at 2, ¶¶5-6; 17-18, ¶119; see Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023).  He does not appear to seek to pursue any claims against Essex County, NY or the Village of Lake Placid in this action.  See generally Compl.

Amendment immunity or there has been a valid abrogation of that immunity by Congress.'" Kisembo v. N.Y.S. Office of Children & Family Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)).  "This jurisdictional bar applies regardless of the nature of the relief sought."  Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). "This immunity 'extends beyond state agencies to state officials at those agencies working on behalf of the state (i.e., in their official capacities).'" Kisembo, 285 F. Supp. 3d at 519 (quoting Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010)).

"With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions."  Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)).  "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'"  Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)).  "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly."  Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).  "Judicial immunity is

immunity from suit, not just immunity from the assessment of damages."[8]  Zavalidroga,
2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  "The
only two circumstances in which judicial immunity does not apply is when he or she
takes action 'outside' his or her judicial capacity and when the judge takes action that,
although judicial in nature, is taken 'in absence of jurisdiction.'"  Id. (quoting Mireles, 502
U.S. at 11-12).

        "In determining whether or not a judge acted in the clear absence of all
jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted
immunity will only be overcome when the judge clearly lacks jurisdiction over the subject
matter.'"  Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting
Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary
order)).  "Whether a judge acted in a judicial capacity depends on the nature of the act
[complained of] itself, i.e., whether it is a function normally performed by a judge, and
[on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial
capacity."  Ceparano, 404 F. App'x at 539 (internal quotation marks and citation
omitted).  "Further, if the judge is performing in his judicial capacity," he "'will not be
deprived of immunity because the action he took was in error, was done maliciously, or
was in excess of his authority; rather, he will be subject to liability only when he has
acted in the clear absence of all jurisdiction.'"  Ceparano, 404 F. App'x at 539 (quoting
Stump v. Sparkman, 435 U.S. 349, 362 (1978)).  "Judges are not, however, absolutely
'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial

---

[8]  "Injunctive relief against judges is also barred 'unless a declaratory decree was violated or declaratory
relief was unavailable.'"  Amato, 2017 WL 9487185, at *3 (quoting Bobrowski v. Yonkers Courthouse, 777
F. Supp. 2d 692, 711 (S.D.N.Y. 2011)).

capacity.'" Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Plaintiff alleges that "[o]n or around December 7, 2022, [he] received documentation that [his] charges were sealed despite [him] not being notified."  Compl. at 4, ¶20.  Plaintiff claims that shortly after, approximately on December 19, 2022, Justice Fisher emailed him, explaining that "the sealing [of plaintiff's court records from Officer Bishop's traffic stop] is done in the normal course of business."  Id. at 4, ¶21. "Plaintiff perceives the[se] actions . . . to be a cover-up of constitutional rights and federal law violations inflaming emotional distress within [himself]."  Id. at 4, ¶22. However, plaintiff does not allege that Justice Fisher "acted absent jurisdiction or outside the bounds of [her] judicial authority."  Dougal v. Lewicki, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at *5 (N.D.N.Y. Oct. 3, 2023), report and recommendation adopted, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023); see Dickerson v. Siegal, No. 23-CV-3859 (EK/LB), 2023 WL 6158833, at *3 (E.D.N.Y. Sept. 21, 2023) ("[T]he scope of the judge's jurisdiction must be construed broadly, such that a court acts in the absence of all jurisdiction only when it does not have any statutory or constitutional power to adjudicate the case.") (citations and internal quotation marks omitted).  Specifically, plaintiff does not dispute that Judge Fisher, as a "Town of Malone" "Town Justice," had jurisdiction over his proceedings.  Compl. at 3-4, ¶18; see Maestri v. Jutkofsky, 860 F.2d 50, 53 (2d Cir. 1988) (noting that Supreme Court has drawn a critical distinction "between 'excess of jurisdiction' and 'clear absence of all jurisdiction'" and holding that "the scope of the judge's jurisdiction [is to be] construed broadly") (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1871)).  Thus, as plaintiff's

claims against Justice Fisher concern conduct taken in her capacity as a judge, she is immune from suit.  See Shtrauch v. Dowd, 651 F. App'x 72, 73-74 (2d Cir. 2016) (summary order) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature'") (quoting Bliven, 579 F.3d at 210); see also Olszyk v. Thorne, No. 3:20-CV-0445 (TJM/ML), 2020 WL 5634328, at *5 (N.D.N.Y. June 17, 2020) ("The Complaint is devoid of facts plausibly suggesting that Defendant [Judge] Barrasse acted in the clear absence of all jurisdiction.  As a result, I recommend that the claims against Defendant Barrasse be dismissed in their entirety based on the doctrine of absolute judicial immunity."), report and recommendation adopted, 2020 WL 5633791 (N.D.N.Y. Sept. 21, 2020).

To the extent plaintiff seeks to bring an action Justice Fisher in her official capacity, the suit is barred by the Eleventh Amendment.  See Pacherille, 30 F. Supp. 3d at 163 n.5 ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").  Accordingly, the undersigned recommends dismissing the claims against Justice Fisher in her individual and official capacities as barred by both judicial immunity and Eleventh Amendment immunity.

## 2. Prosecutorial Immunity

Plaintiff also raises claims against the Franklin County District Attorney.  See Compl. at 3, ¶16; 10, ¶56.  However, "[p]rosecutors are immune from civil suit for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are intimately associated with the judicial phase of the criminal process."  Linder v. Oneida Cnty. Dist. Att'y Off., No. 6:23-CV-01061 (GTS/TWD), 2023 WL 6810098, at *3

(N.D.N.Y. Oct. 16, 2023) (citing Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013), and Imbler v. Pachtman, 424 U.S. 409, 430 (1976)), report and recommendation adopted, 2023 WL 8780112 (N.D.N.Y. Dec. 19, 2023); see Imbler, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.").  In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial."  Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009).

In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial."  Moye v. City of New York, No. 11-CV-316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (internal quotation marks and citations omitted).  "Immunity even extends to the falsification of evidence and the coercion of witnesses, the knowing use of perjured testimony, the deliberate withholding of exculpatory information, the making [of] false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial[.]"  Buari v. City of New York, 530 F. Supp. 3d 356, 378-79 (S.D.N.Y. 2021) (citing Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981), Imbler, 424 U.S. at 431 n.34, Burns v. Reed, 500 U.S. 478, 490 (1991), and Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994)) (internal quotation marks omitted).

Moreover, "'[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.'"  Ying

14

Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993) (quoting Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988)); see also Rich v. New York, No. 21-CV-3835 (AT), 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims [the p]laintiff may raise against the [District Attorney] Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); Gentry v. New York, No. 1:21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities, which were effectively claims against the State of New York, as barred by the Eleventh Amendment), report and recommendation adopted, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

Here, plaintiff claims that he "sent an email to the Franklin County District Attorney requesting the supporting deposition from Officer Bishop traffic stop."  Compl. at 3, ¶16.  Plaintiff claims his rights were violated when "[n]o supporting disposition [sic] was ever provided."  Id. at 10, ¶57.  However, because plaintiff's allegations against the Franklin County District Attorney "relate to non-investigative actions" taken in the District Attorney's capacity as a prosecutor, the Franklin County District Attorney is absolutely immune from suit in its individual capacity.  Linder, 2023 WL 6810098 at *4 (citing Simon, 727 F.3d at 171); see, e.g., Golston v. Cortese, No. 1:21-CV-914 (GTS/CFH), 2022 WL 2657290, at *5 (N.D.N.Y. Apr. 1, 2022) ("To the extent [the] plaintiff alleges actions associated with [the prosecutor's] function as an advocate . . . , [the prosecutor] is absolutely immune from suit in his individual capacity."), report and recommendation adopted, 2022 WL 2071773 (N.D.N.Y. June 9, 2022).

To the extent plaintiff seeks to bring a claim against the Franklin County District Attorney in its official capacity, such claim is without merit.  As indicated above, "when a district attorney is sued for damages in his official capacity, the suit is deemed to be a suit against the state," and, thus, the official has "the Eleventh Amendment immunity belonging to the state."  McKeon v. Daley, 101 F. Supp. 2d 79, 86 (N.D.N.Y. 2000), aff'd, 8 F. App'x 138 (2d Cir. 2001) (summary order).  Accordingly, it is recommended that all claims alleged against the Franklin County District Attorney, in its individual and official capacities, be dismissed.

### 3. § 1983 Claims

Plaintiff contends that Officer Bishop, Franklin County, the Town of Malone, and the Village of Malone violated his constitutional rights under the Fourth and Fourteenth Amendments.  See Compl. at 7-11.

### a. Claims against Officer Bishop

Plaintiff contends that Officer Bishop's traffic stop violated his "reasonable expectation of privacy" and constitutes an "illegal search and seizure."  Compl. at 7, 10-11.  The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. CONST. AMEND. IV; see Terry v. Ohio, 392 U.S. 1, 9 (1968) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.") (citation and internal quotation marks omitted).  "The 'ultimate touchstone' for an analysis of the constitutionality of a search or seizure under the Fourth Amendment is reasonableness."  Mutinsky v. Town of Clarkstown, No. 14-CV-7803 (NSR/PED), 2018 WL 5266880, at *4 (S.D.N.Y. Oct. 22, 2018) (quoting Riley v. California, 573 U.S. 373, 381-82 (2014)).  "As a general matter, '[t]he reasonableness of a search depends on the

16

totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations.'" United States v. Lambus, 897 F.3d 368, 402 (2d Cir. 2018) (quoting Grady v. North Carolina, 575 U.S. 306, 310 (2015)).

### i. Reduced Expectation of Privacy

For an individual's expectation of privacy to be implicated, he first must "have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). "Thus, a court examining a Fourth Amendment claim must decide (1) whether the claimant had an actual or subjective expectation of privacy and (2) whether that expectation is one that society recognizes as reasonable." Goode v. Faraci, No. 3:17-CV-478 (AVC), 2018 WL 10158673, at *3 (D. Conn. Oct. 10, 2018) (citing Katz, 389 U.S. at 361). "If those conditions are satisfied, then the court must determine whether the search or seizure at issue was reasonable." Id.

Here, plaintiff claims that he was stopped by Officer Bishop on or around March 17, 2022, after leaving Akwesasne. Compl. at 3, ¶¶12-13. Plaintiff alleges that Officer Bishop explained that "the traffic stop was initiated because [plaintiff] was seen on camera traveling to 'a high drug trafficking' area." Id. at 8, ¶39; 12, ¶69. Plaintiff contends that, "[i]n all times relevant, [he] was in a 2007 Pontiac G6," that he owned, and, therefore, he "was not being surveilled in a public place using security cameras but was recorded while within his personal, private property." Id. at 11, ¶63. Plaintiff

argues that his "reasonable expectation of privacy was ignored" in violation of the Fourth Amendment. Id. at 11, ¶65.

Contrary to plaintiff's assertions, "citizens possess a reduced expectation of privacy in their vehicles." United States v. Navas, 597 F.3d 492, 497 (2d Cir. 2010) (citing California v. Carney, 471 U.S. 386, 393 (1985)).

> Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.

Carney, 471 U.S. at 392. "Thus, citizens' reasonable expectations of privacy in their vehicles are reduced by the far-reaching web of state and federal regulations that covers not only vehicles but also our nation's roadways." Navas, 597 F.3d at 498; see Young v. City of Kansas City, No. 4:11-CV-00095-W-DGK, 2011 WL 5983351, at *2 (W.D. Mo. Nov. 29, 2011) ("[I]ndividuals have a 'diminished expectation of privacy in an automobile' . . . . [Thus,] there is no legal basis for [the p]laintiff's assertion that red light traffic cameras violate his Fourth . . . Amendment rights to privacy, and [the p]laintiff's claim must be dismissed.").

Accordingly, to the extent that plaintiff vaguely alleges that Officer Bishop violated his Fourth Amendment right to privacy by recording him in his vehicle through the use of a traffic camera, such claim is without merit. It is, therefore, recommended that plaintiff's Fourth Amendment violation of privacy/search and seizure in connection with the traffic camera claim against Officer Bishop be dismissed.

### ii. The Traffic Stop and Search

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." <u>Navas</u>, 597 F.3d at 497 (quoting <u>Katz</u>, 389 U.S. at 357).  Relevant here, "a vehicle may be searched without a warrant in two circumstances." <u>Mason v. Lax</u>, No. 3:20-CV-00039 (KAD), 2020 WL 1940667, at *3 (D. Conn. Apr. 22, 2020).  First, under the mobility rationale, "an arresting officer may search a vehicle incidental to a lawful arrest 'when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest.'" <u>Mason</u>, 2020 WL 1940667, at *3 (quoting <u>Arizona v. Gant</u>, 556 U.S. 332, 346 (2009)).  Second, "under the automobile exception, a law enforcement officer may search a vehicle without a warrant where the officer has probable cause to believe that the vehicle contains contraband." <u>Id.</u> (citing <u>United States v. Babilonia</u>, 854 F.3d 163, 178 (2d Cir. 2017)); <u>see</u> <u>United States v. Wilson</u>, 699 F.3d 235, 245 (2d Cir. 2012).  Probable cause requires only a "fair probability" that evidence of a relevant violation will be found in the place to be searched.  <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983); <u>see</u> <u>United States v. Ross</u>, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").  In the context of traffic laws, "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." <u>United States v. Stewart</u>, 551 F.3d 187, 193 (2d Cir. 2009); <u>see</u> <u>Guillen v. City of New York</u>, No. 19-CV-11784 (NRB), 2023 WL 2561574, at *4 (S.D.N.Y. Mar. 17, 2023).  Even a "minor" traffic violation meets this standard and

provides probable cause for a stop.  United States v. Scopo, 19 F.3d 777, 782 (2d Cir. 1994) (finding police had probable cause to stop the individual for "not signaling lane changes").

Plaintiff claims that, during the traffic stop, Officer Bishop "asked to search the vehicle."  Compl. at 12, ¶69.  Plaintiff alleges that he "responded by stating that he did 'not believe there was any reason to do so,'" but ultimately "gave Officer Bishop permission to look into his vehicle" as he "felt pressured to waive his Constitutional rights."  Id. at 8, ¶40; 12, ¶¶70, 72.   Plaintiff contends that he "did not give Officer Bishop explicit permission to open the trunk of the vehicle," yet Officer Bishop did so. Id. at 12, ¶72.  Plaintiff further claims that Officer Bishop asked to search luggage that was in the trunk, and plaintiff felt pressured so he "allowed Officer Bishop to search his luggage after the trunk was illegally opened."  Id. at 8, ¶¶41-44.

To the extent plaintiff claims that Officer Bishop violated the Fourth Amendment through his search of the trunk, such a claim is without merit.  Specifically, although plaintiff argues that he "did not give Officer Bishop explicit permission to open the trunk of the vehicle," he acknowledges that he ultimately "gave Officer Bishop permission to look in his vehicle."  Compl. at 8, ¶40; 12, ¶72.  A reasonable person in Officer Bishop's position could have understood that being granted "permission to look in his vehicle" encompasses "permission to open the trunk of the vehicle."  Id.; see Florida v. Jimeno, 500 U.S. 248, 249 (1991) ("The Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to [conduct the search that was undertaken].");  see also United States v. Chaidez, 906 F.2d 377, 383-84 (8th Cir. 1990) (holding that the

individual's consent for a police officer to "look in" the car authorized the officer not only to look into the car's passenger compartment, but also to use his hands to search underneath the seats). Moreover, "[a]t no time did [plaintiff] attempt to retract or narrow his consent." United States v. Espinosa, 782 F.2d 888, 892 (10th Cir. 1986). Plaintiff's "[f]ailure to object to the continuation of [Officer Bishop's] search under these circumstances may be considered an indication that the search was within the scope of [plaintiff's] consent."[9] Id. Thus, it is not apparent that Officer Bishop's search of plaintiff's trunk was "unreasonable." Cf. United States v. Wilson, 636 F.2d 1161, 1163-65 (8th Cir. 1980) (concluding that a search was "unreasonable" where the officers did not ask for the individual's consent to search the individual's locked automobile trunk).

However, plaintiff states that he was stopped because he was "seen on camera traveling to 'a high drug trafficking' area." Compl. at 8, ¶38. Liberally construing his complaint, plaintiff alleges that he was not stopped for a traffic infraction but instead solely for driving in a high crime area. Cf. Mason v. Besse, No. 3:20-CV-246 (KAD), 2020 WL 2523506, at *6 (D. Conn. May 18, 2020) (dismissing the plaintiff's Fourth Amendment claims where the plaintiff offered "no facts" regarding the traffic stop, the search and seizure of the plaintiff's truck, or the officers involved in the incident). "[T]he Fourth Amendment requires more than observing a car driving through a high crime neighborhood . . . to show probable cause for a traffic stop." Holeman v. City of New

---

[9] Although plaintiff argues he "felt pressured to waive his Constitutional rights and allow Officer Bishop to look in the vehicle," there is nothing in his complaint to indicate that he was "coerced, by explicit or implicit means, by implied threat or cover force" to consent to Officer Bishop's search of the vehicle. Compl. at 12, ¶72; United States v. Snype, 441 F. 3d 119, 130-31 (2d Cir. 2006) (citing Sckneckloth v. Bustamonte, 412 U.S. 218, 228 (1973)); see, e.g., United States v. Stephen H. Walter, No. 1:06-CR-99-01, 2007 WL 1795770, at *4 (D. Vt. June 20, 2007) ("The fact that the [individual] felt pressured to [consent to the search] does not render his consent coerced under the Fourth Amendment."). Thus, any claim that his consent was not voluntary is without merit.

21

London, 330 F. Supp. 2d 99, 113 (D. Conn. 2004), rev'd in part on other grounds, 425 F.3d 184 (2d Cir. 2005).  Given what is alleged in the complaint, it is not clear whether Officer Bishop had probable cause or reasonable suspicion to pull plaintiff over.  Cf. Aikman v. Cnty. of Westchester, 491 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (dismissing the plaintiff's Fourth Amendment "racial profile claim" where the officers "had probable cause to believe [the plaintiff] violated New York traffic laws").  Thus, it is recommended that plaintiff's Fourth Amendment unlawful search claim against Officer Bishop survive initial review.  See Early v. Cannon, No. 6:19-CV-02846 (DCC/JDA), 2019 WL 7905900, at *4 (D.S.C. Oct. 31, 2019) (explaining that the plaintiff's unlawful search claim survives initial review because the plaintiff specifically alleged that the defendant "initiated an unlawful traffic stop without probable cause and then searched [the p]laintiff's car without a warrant and without probable cause"), report and recommendation adopted, 2020 WL 467833 (D.S.C. Jan. 29, 2020).

**b. Claims against Franklin County, the Town of Malone, and the Village of Malone**

**i. Municipal Liability**

Plaintiff contends that Franklin County, the Town of Malone, and the Village of Malone failed to adequately train and supervise its employees on the sealing of court records.  See Compl. at 16-18.  Plaintiff argues that Franklin County, the Town of Malone, and the Village of Malone "had the ability and responsibility to ensure the accuracy of all court records and public transparency of such," but failed to do so.  Id. at 17, ¶113.  "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'"  Dougal, 2023 WL 6430586, at *10

(quoting <u>Jones v. Town of E. Haven</u>, 691 F.3d 72, 80 (2d Cir. 2012), and citing <u>Monell v.</u>

<u>Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 690-91 (1978)); <u>see</u> <u>Kelly v.</u>

<u>Mclennan</u>, No. 3:22-CV-1366 (JAM), 2023 WL 3818585, at *4 (D. Conn. June 5, 2023)

("A municipality may be liable for unconstitutional misconduct by its employees if the

misconduct was caused by a municipal policy, practice, or custom, or if it was caused

by a municipality's deliberate indifference and inaction in light of a history of prior similar

constitutional deprivations by municipal employees.").  "Municipalities may only be held

liable when the municipality itself deprives an individual of a constitutional right; it 'may

not be held liable on a theory of respondeat superior.'"  <u>Morris v. Martin</u>, No. 5:16-CV-

00601 (NAM/TWD), 2016 WL 4059209, at *3 (N.D.N.Y. June 21, 2016) (quoting <u>Jeffes</u>

<u>v. Barnes</u>, 208 F.3d 49, 56 (2d Cir. 2000)), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2016

WL 4098611 (N.D.N.Y. July 28, 2016).  An "official policy or custom" of the municipality

can be shown in several ways:

> (1) a formal policy officially endorsed by the municipality;
> (2) actions taken by government officials responsible for
> establishing municipal policies related to the particular
> deprivation in question; (3) a practice so consistent and
> widespread that it constitutes a "custom or usage" sufficient
> to impute constructive knowledge of the practice to
> policymaking officials; or (4) a failure by policymakers to train
> or supervise subordinates to such an extent that it amounts
> to "deliberate indifference" to the rights of those who come in
> contact with the municipal employees.

<u>Dorsett-Felicelli, Inc. v. Cnty. of Clinton</u>, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005)

(citations omitted).  "[M]ere allegations of a municipal custom, a practice of tolerating

official misconduct, or inadequate training and/or supervision are insufficient to

demonstrate the existence of such a custom unless supported by factual details."

<u>Tieman v. City of Newburgh</u>, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar.

26, 2015).  Thus, "'boilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a <u>Monell</u> claim.'"  <u>Thomas v. Town of Lloyd</u>, ___ F. Supp. 3d ___, No. 1:21-CV-1358, 2024 WL 118939, at *10 (N.D.N.Y. Jan. 11, 2024) (quoting <u>Forrest v. Cnty. of Greene</u>, 676 F. Supp. 3d 69, 76 (N.D.N.Y. 2023), <u>reconsideration</u> <u>denied</u>, 2023 WL 5097970 (N.D.N.Y. Aug. 9, 2023)); <u>see</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 809 (1985) ("There must at the very least be an affirmative link between the municipality's policy and the particular constitutional violation alleged.").

Here, plaintiff has not alleged facts plausibly showing that Franklin County, the Town of Malone, or the Village of Malone failed to properly hire, supervise, and train subordinates in connection with his claims.  <u>See</u> <u>Dougal</u>, 2023 WL 6430586, at *10 (dismissing on § 1915 review the plaintiff's complaint against Saratoga County because the plaintiff did "not include any allegations in his complaint concerning municipal conduct that states a <u>Monell</u> claim"); <u>see also</u> <u>Syfert v. City of Rome</u>, No. 6:17-CV-0578 (GTS/TWD), 2018 WL 3121611, at *7 (N.D.N.Y. Feb. 12, 2018) (collecting cases dismissing <u>Monell</u> claims where the complaint contains no factual support for the existence of an unconstitutional policy or custom and only conclusory allegations referencing a failure to train), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2018 WL 2316681 (N.D.N.Y. May 22, 2018), <u>aff'd</u>, 768 F. App'x 66 (2d Cir. 2019) (summary order).  Instead, plaintiff's allegations are "conclusory, and therefore must be disregarded."  <u>Simms v. City of New York</u>, No. 10-CV-3420 (NGG/RML), 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (citing <u>Iqbal</u>, 556 U.S. at 678-79) (dismissing conclusory allegations that did not provide any facts that would allow the court to infer what city

policies or practices led to the alleged deficiency), aff'd, 480 F. App'x 627 (2d Cir. 2012);
see also Triano v. Town of Harrison, 895 F. Supp. 2d 526, 535-36 (S.D.N.Y. 2012)
(collecting cases and noting that "mere allegations of a municipal custom or practice of
tolerating official misconduct are insufficient to demonstrate the existence of such a
custom unless supported by factual details").  Thus, plaintiff has failed to state a
municipal liability claim.[10]  Given the foregoing, it is recommended that plaintiff's claims
against Franklin County, the Town of Malone, and the Village of Malone be dismissed.

### ii. Fourteenth Amendment

Plaintiff further claims that, "[b]y sealing court records improperly and without the
consent of [p]laintiff, [p]laintiff's Due Process rights are thwarted" as "[p]laintiff wished
for the court records to be public record."  Compl. at 9, ¶49.  Plaintiff also contends that
he requested a "supporting deposition from Officer Bishop traffic stop," which "was
[n]ever provided, thus a violation of [his] Due Process Rights."  Id. at 3, ¶16; 10, ¶¶54-
58.  Liberally construing plaintiff's complaint, he appears to bring Fourteenth
Amendment claims against Franklin County, the Town of Malone, and the Village of
Malone.[11]

---

[10] In light of plaintiff's pro se status, the undersigned clarifies that "Monell does not provide a separate
cause of action for the failure by the government to train its employees; it extends liability to a municipal
organization where that organization's failure to train, or the policies or customs that it has sanctioned, led
to an independent constitutional violation."  Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).
"In other words, a Monell claim [against Franklin County, the Town of Malone, and the Village of Malone]
cannot succeed without an independent constitutional violation." Anilao v. Spota, 27 F.4th 855, 874 (2d
Cir. 2022).  As noted infra, plaintiff has failed to demonstrate that the underlying claims—sealing of his
court records and failing to provide a copy of a deposition—violate any constitutional right.
[11] Plaintiff also seeks to bring a due process claim against the Franklin County District Attorney for failing
to provide the supporting deposition.  See Compl. at 10, ¶¶54-58.  However, as indicated above, the
Franklin County District Attorney is entitled to prosecutorial immunity.  See discussion supra Subsection
II.C.2.

"The Fourteenth Amendment forbids states from depriving any person of property without due process of law."  Augusta v. Cmty. Dev. Corp. of Long Island, No. 07-CV-0361 (JG/ARL), 2008 WL 5378386, at *5 (E.D.N.Y. Dec. 23, 2008) (citing U.S. CONST. AMEND. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . .")), aff'd, 363 F. App'x 79 (2d Cir. 2010) (summary order).  "The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes, and, if so, what process was due before plaintiff could be deprived of that interest."  Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (citation omitted); see, e.g., Braun v. City of New York, 284 F. Supp. 3d 572, 578 (S.D.N.Y. 2018) ("To sustain a Section 1983 claim for deprivation of due process under the Fourteenth Amendment, the plaintiff must sufficiently allege (1) that he had a property interest in his employment, Disability Retirement, or sealed criminal records, and (2) that he did not receive constitutionally adequate process before being deprived of those interests.") (citing Ciambriello v. Cnty. Of Nassau, 292 F.3d 307, 313 (2d Cir. 2002)).

Plaintiff generally asserts "[b]y sealing court records improperly and without [his] consent[, his] Due Process rights [were] thwarted" by Franklin County, the Town of Malone, and the Village of Malone.  Compl. at 9, ¶49.  However, plaintiff does not identify what, if any, constitutionally-protected property interest he has in his court records being kept unsealed.[12]  See Braun, 284 F. Supp. 3d at 578 ("The plaintiff had

---

[12] Under New York common law, the "right to inspect and copy judicial records is not absolute . . . and the determination of whether access to such records is appropriate is best left to the sound discretion of the trial court[.]"  Coopersmith v. Gold, 594 N.Y.S.2d 521, 527 (Sup. Ct. 1992) (citations and internal quotation marks omitted).

no such [property interest or] legitimate claim of entitlement to his criminal records or to their sealing [as] the records were government property. . . . Therefore, the plaintiff cannot state a claim relating to the unsealing of those records under the Due Process Clause of the Fourteenth Amendment.").  Plaintiff has also failed to adequately explain his constitutionally-protected property interest in the "supporting deposition from Officer Bishop traffic stop."  Compl. at 3, ¶16.  Thus, plaintiff has not established that he suffered a deprivation of a constitutionally-protected property interest to support a due process claim.  See Stoianoff v. Comm'r of Motor Vehicles, 107 F. Supp. 2d 439, 448 (S.D.N.Y. 2000) ("In order to allege a violation of his due process rights, Mr. Stoianoff must establish, as a threshold matter, that he suffered a deprivation of a constitutionally-protected liberty or property interest"), aff'd sub nom. Stoianoff v. Comm'r of Dep't of Motor Vehicles, 12 F. App'x 33 (2d Cir. 2001) (summary order).

The Fourteenth Amendment also "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them."  Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021) (citation omitted).  "The first step in substantive due process analysis is to identify the constitutional right at stake."  Id. (citation omitted).  "Substantive due process protections extend only to those interests that are 'implicit in the concept of ordered liberty,' which are rights 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  Smith v. Hogan, 794 F.3d 249, 255-56 (2d Cir. 2015) (citations omitted).  "Next, the plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Hurd, 984 F.3d at 1087 (citation and quotation marks omitted).  "The

27

interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection."  Id. (quoting Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2012)).

"[C]riteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue."  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  "To prevail when challenging [a specific act of a governmental officer] that infringes a protected right, a plaintiff must show not just that the action was literally arbitrary, but that it was 'arbitrary in the constitutional sense[.]'"  O'Connor v. Pierson, 426 F.3d 187, 203 (2d Cir. 2005) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)).  "Mere irrationality is not enough: 'only the most egregious official conduct,' conduct that 'shocks the conscience,' will subject the government to liability for a substantive due process violation based on [the officer's] action[s]."  Id. (quoting Cnty. of Sacramento, 523 U.S. at 846).  "[T]he measure of what is conscience-shocking is no calibrated yard stick . . . ."  Id. (citation omitted).  "[W]hether [the officer's actions] shocks the conscience depends on the state of mind of the [officer] and the context in which the action was taken."  Id.

To the extent plaintiff brings a substantive due process claim against Franklin County, the Town of Malone, or the Village of Malone for sealing his records, or for failing to provide a supporting deposition, such claim is without merit.  Even if plaintiff's records were sealed without his consent, and he was not provided a deposition upon his request, he has failed to identify government action that was "so arbitrary and conscience-shocking that . . . violated [plaintiff's] substantive due process rights."  Harris

v. Binghamton Police Dep't, No. 3:22-CV-0977 (BKS/ML), 2023 WL 8436003, at *4 (N.D.N.Y. Sept. 15, 2023), report and recommendation adopted, 2023 WL 7319090 (N.D.N.Y. Nov. 7, 2023); see Medley v. Garland, 71 F.4th 35, 49 (2d Cir. 2023) (noting that conscience-shocking or egregious conduct "is, by definition, 'extreme, rare, and obvious'") (quoting Maldonado v. Holder, 763 F.3d 155, 165 (2d Cir. 2014)). Specifically, it cannot be said that Franklin County, the Town of Malone, or the Village of Malone "was without any reasonable justification in the service of a legitimate governmental objective" when it sealed plaintiff's court records or declined to provide a supporting deposition.  Tenenbaum, 193 F.3d at 600; see Harris, 2023 WL 417897, at *6 (dismissing the plaintiff's substantive due process claim because the plaintiff failed to establish that "the actions of [the d]efendants were so arbitrary and conscience-shocking").  Accordingly, it is recommended that plaintiff's Fourteenth Amendment claims against Franklin County, the Town of Malone, and the Village of Malone be dismissed.

### 4. ADA/RA Claims

Plaintiff alleges that Franklin County, the Town of Malone, and the Village of Malone violated the ADA and the RA.  See Compl. at 14-15.  Plaintiff claims that he suffers from PTSD and ADHD.  See id. at 5-6.  Plaintiff contends that Franklin County, the Town of Malone, and the Village of Malone "attempted to use [p]laintiff's symptoms qualifying for disability against him"; "made choices enabling [ADA] and [RA] violations"; and "were hoping [p]laintiff would just forget with time or be too distracted to take any action."  Id. at 15, ¶95.

"Title II of the ADA proscribes discrimination against the disabled in access to public services." Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12132(2). "The public entities defined in the ADA are state or local governments and their instrumentalities." Chavous v. Hous. Visions Unlimited, Inc., No. 5:22-CV-00811 (LEK/TWD), 2022 WL 9967833, at *3 (N.D.N.Y. Oct. 17, 2022) (citing 42 U.S.C. § 12131(1)), report and recommendation adopted, 2023 WL 1775699 (N.D.N.Y. Feb. 6, 2023).

Similarly, § 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Davis v. Shah, 821 F.3d 231, 259 (2d Cir. 2016) (citing 29 U.S.C. § 794(a)). "Because the standards under both [the ADA and the RA] are generally the same and the subtle distinctions between the statutes are not implicated in this case, 'we treat claims under the two statutes identically.'" Wright v. New York State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

> To establish a prima facie violation under Title II of the ADA
> or the RA, a plaintiff must show: "that 1) he is a qualified

30

> individual with a disability; 2) [defendants are] entit[ies]
> subject to the acts; and 3) he was denied the opportunity to
> participate in or benefit from [defendants'] services,
> programs, or activities or [defendants] otherwise
> discriminated against him by reason of his disability."

Rivera v. Quiros, No. 3:23-CV-227 (OAW), 2024 WL 363193, at *6 (D. Conn. Jan. 31, 2024) (quoting Wright, 831 F.3d at 72).  There are "three available theories" of discrimination that can be used to establish the third prong of an ADA and RA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

Plaintiff has adequately alleged, at least for purposes of this review, that he is a qualified individual with a disability and defendants are entities subject to the acts.  See generally Compl.  However, plaintiff has failed to sufficiently plead that Franklin County, the Town of Malone, or the Village of Malone "denied [him] the opportunity to participate in or benefit from public services, programs, or activities, or has otherwise discriminated against him, by reason of his disability rather than a legitimate nondiscriminatory reason."  Tsuma v. Costello, No. 3:22-CV-00067 (SVN), 2022 WL 1036819, at *8 (D. Conn. Apr. 6, 2022).  Specifically, plaintiff has not pleaded that the Franklin County, the Town of Malone, or the Village of Malone discriminated against him on the basis of his PTSD and ADHD.  See Franks v. Eckert, No. 18-CV-589 (EAW), 2020 WL 4194137, at *4 (W.D.N.Y. July 21, 2020) ("Although [the p]laintiff has alleged he was denied some of his requested reasonable accommodations, there are no facts in the Amended Complaint to suggest that [the d]efendants refused to allow [the p]laintiff to participate in any program or activity because of his disability"); see also Rosado v. Herard, No. 12-

31

CV-8943 (PGG/FM), 2014 WL 1303513, at *6 (S.D.N.Y. Mar. 25, 2014) (dismissing

ADA and RA claims where the plaintiff failed to "plead[ ] facts demonstrating that he was

denied access to therapeutic group sessions because of a disability").  Instead, plaintiff

asserts that he suffers from PTSD and ADHD, and that he was mistreated by

employees of Franklin County, the Town of Malone, and the Village of Malone, but fails

to allege that he was mistreated because of his PTSD or ADHD.  See Moran v.

Deamelia, No. 1:17-CV-422 (TJM/CFH), 2017 WL 2805160, at *3 (N.D.N.Y. Apr. 20,

2017) ("Although [the] defendants may have been aware of [the] plaintiff's alleged

disabilities because his underlying discrimination complaint against his former employer

filed with the NYSDHR appears to have been based, in part, on his disabilities, he offers

not even a scintilla of proof that the alleged misconduct was 'motivated' by his major

depressive disorder and ADHD."), report and recommendation adopted, No. 1:17-CV-

422, 2017 WL 2804941 (N.D.N.Y. June 28, 2017).  Indeed, there are no facts to

suggest that Franklin County, the Town of Malone, or the Village of Malone were even

aware of his disability.  See, e.g., Costabile v. New York Dist. Council of Carpenters,

No. 17-CV-8488, 2018 WL 4300527, at *5 (S.D.N.Y. Sept. 10, 2018) (dismissing the

plaintiff's discrimination claim under the ADA because he failed to allege that the

defendants were aware of his disability, and, thus, "fail[ed] to plead even a barebones

claim of disability discrimination").  Moreover, plaintiff does not identify what public

services, programs, or activities he was denied the opportunity to participate in or

benefit from.  See Cordero v. Semple, 696 F. App'x 44, 45 (2d Cir. 2017) (summary

order) (affirming the dismissal of an ADA claim because the plaintiff "did not allege that

his conditions prevented him from participating in any programs or activities").  It is,

therefore, recommended that plaintiff's ADA and RA claims against Franklin County, the Town of Malone, and the Village of Malone be dismissed.

### 5. State Law Claims

Plaintiff also seeks to bring state law negligent infliction of emotional distress ("NIED") claims.  See Compl. at 11-14.  A district court has discretion to hear state law claims where the relationship between a plaintiff's federal and state claims present "but one constitutional case" and "derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see Petaway v. City of New Haven Police Dep't, 541 F. Supp. 2d 504, 515 (D. Conn. 2008) ("Supplemental or pendent jurisdiction is a matter of discretion, not of right.") (citation omitted).  "If 'plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding,' the court will generally exercise supplemental jurisdiction if 'judicial economy, [and] convenience and fairness to litigants' weigh in favor of hearing the state claims at the same time."  Forbes v. City of Rochester, 612 F. Supp. 3d 159, 170-71 (W.D.N.Y. 2020) (quoting United Mine Workers, 383 U.S. at 726); see also 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  Plaintiff's NIED claims derive from the same operative facts as the federal claims he seeks to bring, thus, the Court may choose to exercise supplemental jurisdiction over his state law NIED claims.

Plaintiff purports to bring an NIED claim against Officer Bishop for conducting an "illegal search" of his vehicle, arguing that the "questionable circumstances surrounding

the initiation of the traffic stop inflamed symptoms of emotional distress."  Compl. at 12,

¶74.  Plaintiff also claims that "[d]ue to [his] past traumatizing experience of having an

arrest broadcast illegally, being stopped for simply driving through cameras inflamed

symptoms of emotional distress[.]"  Id. at 12, ¶71.  However, under New York Law, an

NIED claim requires a showing that the plaintiff "suffer[ed] emotional distress caused by

defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical

safety."  Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000) (internal quotation marks

and citation omitted); see, e.g., De Rosa v. Stanley B. Michelman, P.C., 584 N.Y.S.2d

202, 203 (App. Div. 1992) (explaining that, to state a cognizable claim for NIED, a

complaint must allege, inter alia, that the defendant's conduct "unreasonably endangers

the plaintiff's physical safety").  The duty in question "must be specific to the plaintiff,

and not some amorphous, free-floating duty to society."  Dzwonczykv. Syracuse City

Police Dep't, 710 F. Supp. 2d 248, 272 (N.D.N.Y. 2008).  "This duty is far more specific

than the more generalized duty to avoid negligently injuring another."  Druschke v.

Banana Republic, Inc., 359 F. Supp. 2d 308, 315 (S.D.N.Y. 2005); see also Hazan v.

City of New York, No. 98-CV-1716 (LAP), 1999 WL 493352, at *5 (S.D.N.Y. July 12,

1999) ("Although the City [of New York] has a general duty to prevent its police force

from inflicting unreasonable harm on society at large, this duty was not a special one

owed specifically to the plaintiff") (internal citations omitted).  Here, plaintiff does not

allege that Officer Bishop placed him in any physical danger.  See Nova v. Smith, No.

9:19-CV-0072 (GTS/TWD), 2019 WL 2636817, at *3 (N.D.N.Y. June 27, 2019)

("Because the amended complaint in this case does not allege that [the] defendant . . .

placed [the] plaintiff in any physical danger, [the] plaintiff's NIED claims are dismissed

for failure to state a claim upon which relief may be granted"), on reconsideration in part, 2019 WL 5295165 (N.D.N.Y. Oct. 18, 2019); see also Waterbury v. New York City Ballet, Inc., 168 N.Y.S.3d 417, 427 (App. Div. 2022) (affirming the dismissal of the plaintiff's NIED claim because "[g]enerally, this cause of action requires that the plaintiff either be placed in physical danger or reasonably fear that she has been" and "[t]here [was] no allegation that [the plaintiff had] been placed in physical danger").  Plaintiff also fails to assert any special duty Officer Bishop owed to him aside from his general duty to the public as a police officer.  See Burroughs v. Mitchell, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018) ("Upon review, Burroughs has failed to allege any special duty owed to him by defendants aside from the general duty to all inmates not to use excessive force that violates their constitutional rights.").  Accordingly, it is recommended that plaintiff's NIED claim against Officer Bishop be dismissed.

Plaintiff also seeks to bring an NIED claim against Franklin County, the Town of Malone, and the Village of Malone for Officer Bishop's conduct, as well as for sealing plaintiff's records without notifying him and instead telling him this was "done in the normal course of business."  Compl. at 14, ¶87.  However, "'[a] municipality cannot be sued for common law negligence unless the municipality owed a special duty to the plaintiff.'"  Ellis v. Washington, 409 F. Supp. 3d 148, 155 (W.D.N.Y. 2019) (quoting Paul v. City of New York, No. 16-CV-1952 (VSB), 2017 WL 4271648, at *9 (S.D.N.Y. Sept. 25, 2017)).  "Such a special duty arises when there exists a special relationship between the governmental entity and the plaintiff."  Henry-Lee v. City of New York, 746 F. Supp. 2d 546, 564 (S.D.N.Y. 2010) ("A special relationship exists in three circumstances: (1) when the municipality violates a statutory duty enacted for the

benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation.") (citations and internal quotation marks omitted).  "The duty must be more than one the municipality owed to the public generally."  Paul, 2017 WL 4271648, at *9 (citing Valdez v. City of New York, 936 N.Y.S.2d 587, 593-96 (2011)).

Here, plaintiff has not asserted a special duty or relationship between himself and Franklin County, the Town of Malone, or the Village of Malone.  See, e.g., Karcz v. City of N. Tonawanda, No. 20-CV-9V (SR), 2023 WL 2654210, at *4 (W.D.N.Y. Feb. 24, 2023) (dismissing the plaintiff's NIED claim where the plaintiff "failed to allege a special duty as required for a negligent infliction of emotional distress claim"), report and recommendation adopted, 2023 WL 2652486 (W.D.N.Y. Mar. 27, 2023).  Specifically, there are no allegations in his complaint that could support a finding of a special relationship between plaintiff and Franklin County, the Town of Malone, and the Village of Malone beyond the duty owed by the municipalities to the public at large.  See Bryant v. Ciminelli, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017) (dismissing the plaintiff's NIED claim against the City of Rochester because the "[p]laintiff has not alleged any special duty between [the City] and himself[; p]laintiff only allege[d] that [the City] owed him a duty of care—the same duty which would be owed to the general public"); see also Hunter v. Cnty. of Orleans, No. 12-CV-6173, 2013 WL 6081761, at *6 (W.D.N.Y. Nov. 19, 2013) (granting summary judgment on the plaintiff's negligence claim against the county where no special relationship was established).  Thus, it is recommended that

any NIED claims against the Franklin County, the Town of Malone, and the Village of Malone be dismissed.

### III. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'" Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)). Insofar as Justice Fisher and the Franklin County District Attorney are immune from suit, it is recommended that the claims against them be dismissed with prejudice and without leave to amend.

As for the §1983 claims against Franklin County, the Town of Malone, and the Village of Malone, it is recommended that they be dismissed without prejudice and with leave to amend should plaintiff wish to plead proper claims for municipal liability in connection with his Fourteenth Amendment claims.[13] See discussion supra Subsection

---

[13] Any amended pleading supersedes and replaces a prior pleading in its entirety. In the event the District Judge adopts the undersigned's Report-Recommendation and Order and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. See, e.g., Anthony v. Fein, Such & Crane, LLC, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint"), report and recommendation adopted, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015). Further, an amended complaint may not replead any claims or defendants dismissed by this Court with prejudice. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

II.C.3.  As for the ADA and RA claims against Franklin County, the Town of Malone, and the Village of Malone, it is also recommended that they be dismissed without prejudice and with leave to amend should plaintiff wish to plead proper claims for discrimination. See discussion supra Subsection II.C.4.  Further, as for the state law tort claims, it is recommended that they be dismissed without prejudice and with leave to amend should plaintiff wish to plead a proper claim for NIED.  See discussion supra Subsection II.C.5.


## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's Fourth Amendment claim against Officer Bishop be **PERMITTED TO PROCEED**; and it is further

**RECOMMENDED**, that plaintiff's claims against Justice Fisher and Franklin County District Attorney be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's § 1983, ADA, and RA claims against Franklin County, the Town of Malone, and the Village of Malone be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's state law NIED claims against Officer Bishop, Franklin County, the Town of Malone, and the Village of Malone be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's motion for reconsideration (Dkt. No. 9) be **DENIED** as moot; and it is

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint, (1) it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court, and (2) the matter be returned to the Magistrate Judge for service of the original complaint for any claims that were permitted to proceed in the original complaint, with all other claims deemed stricken; and that no summonses be issued or the complaint be served until it is determined whether plaintiff will proceed on an amended complaint and that complaint be fully reviewed by the Court pursuant to § 1915; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[14]

---

[14] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen

Dated:  April 30, 2024
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

(17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).